**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NASHAE NAEISHA SMITH** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  21-5120** |
| | : | |
| **BENNETTE HARRISON**, *et al.* | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                                      **February 14, 2022**

Nashae Naeisha Smith is frustrated with the Philadelphia child welfare system. The Commonwealth separated her three children from her and placed them in foster care. She blames a variety of persons for a court process delaying her desired reunification hearing with her three separated children and wants her three minor children properly protected while in foster homes. We certainly appreciate a parent's primary instinct to protect and reunite her children. But federal court is not the forum to force Philadelphia child welfare professionals to meet her timeline. She does not plead a basis to compel the state court to enter her requested orders in the ongoing family court dispute. She has an adequate remedy in the state courts.

Ms. Smith also pro se seeks damages from a variety of child welfare professionals. We allowed her to proceed without paying the filing fees. We now review her consolidated Complaint against three parties who she asks us to consider as state actors but only pleaded facts allowing us to infer Social Services Program Analyst Cynthia L. Everett acted under the color of law. Ms. Smith pleads no facts allowing us to plausibly infer a private assistance agency or an alleged child advocate is a state actor. Ms. Smith's pleading confirms she can only sue Analyst Everett for civil rights claims.

Ms. Smith pleads no basis to impose liability upon Analyst Everett as the only plead state actor. Ms. Smith does not allege conduct by Analyst Everett or other named parties violating her

Constitutional right to the custody, care and management of her children which would "shock the conscience" necessary for a substantive due process claim. She does not plead harm or injury based on Ms. Smith's alleged deprivations of procedural due process or impeding her access to the court under the First Amendment.

We dismiss her fourth attempt at pleading civil rights claims for failing to state a claim consistent with Congress's mandate. We dismiss her claims without prejudice with one last leave to file a fifth amended Complaint seeking damages under this caption.

## I.     Alleged pro se facts.

Ms. Smith is the mother of three minor children seemingly separated from her under an unplead court direction. She is seeking reunification in ongoing family court matters in Philadelphia County. It appears her children are currently in foster care.

She focuses on three persons/entities causing her delay in reunifying her children. She first alleges the Asociación Puertorriqueños en Marcha ("Asociación"), a Philadelphia Community Umbrella Agency, and its employees Nilda Ruiz, Keyanna Hunter, Amber Brown, Zabdiel San Miguel, Kasey Roscoe, and Bennette Harrison "failed to provide safety and stability for [her] children," provided inadequate medical and dental care, failed to transfer the children's personal effects to their foster homes resulting in the children having seasonally inappropriate clothing, failed to provide mandated sibling visits, and suspended her in person visits with her children without explanation or court order.[1] The Philadelphia Department of Human Services works with Community Umbrella Agencies to provide case management services for child welfare.[2]

Ms. Smith also sues child advocate Andre Martino.[3] She alleges Advocate Martino's failure to appear at her permanency hearings caused the court to delay the hearing, resulting in an unreasonable extension of her family separation.[4]

Ms. Smith sues Cynthia L. Everett,  a Social Services Program Analyst in the Philadelphia Department of Human Services. Ms. Smith alleges Analyst Everett failed to ensure Asociación carried out its duties.[5] She also alleges Analyst Everett exhibited "prejudice towards [her]" and attaches emails characterized as "threatening retaliatory action if [she] continued to reachout [*sic*] to DHS authority."[6]

Ms. Smith identifies January 6, 2021 through the present as the dates of the events giving rise to her claims.[7] She specifies July 21, 2021, May 29, 2021, August 29, 2021, and October 27, 2021 as significant dates but offers no further facts regarding what occurred on those dates except a "specific communication" on July 21, 2021.[8]

We liberally infer Ms. Smith is referring to Analyst Everett's July 21, 2021 email asking Ms. Smith to "stop the daily emails/calls" and to "please stop adding the DHS Commissioner and Deputy Commissioners, to [her] ongoing email communications to the CUA Agency."[9] Analyst Everett told Ms. Smith failure to follow protocol "could have a negative outcome on [Ms. Smith's] services/service delivery and how decisions are made about [her]/[her] family, in and/or outside of the Court room."[10] Analyst Everett repeated these warnings in an October 22, 2021 email cautioning against Ms. Smith's insistence on "sending all of these emails to everyone and/or emailing CUA/DHS about every single case matter or conflict."[11] Analyst Everett writes:

> I'm afraid that if you and other folks that conduct themselves in this same manner don't ease up…, CUA/DHS will be forced to explore our options around blocking email correspondence for people who are misusing this platform by promoting negativity/slander/intimidation to the Agencies that are charged with the task of trying to ensure Children's safety, well-being and preserving/strengthening/ empowering their families.

> JSF: Katherine has been blind copied to explore the issue of blocking with the City of Philadelphia and DHS IT Team. Law Department please explore…, if Clients who continue this forced engagement is [*sic*] treading on slander and/or intimidation.[12]

Ms. Smith responded to Analyst Everett's October 22, 2021 email three times but she does not plead the response or attach emails sent after October 22, 2021. Ms. Smith does not allege she ceased communications as advised or Analyst Everett otherwise deterred her pursuit of a reunification hearing. Ms. Smith does not plead she took action, or refrained from taking action, based on Analyst Everett's emails.

## II.    Analysis

Ms. Smith submits multiple pro se requests for relief. Ms. Smith claims the failure to schedule a reunification hearing caused her emotional and physical distress. She seeks compensatory damages for family therapy, special needs therapy, educational tutors, and daycare services.[13] She also requests general "funds" to allow her to "be more present" when reunified with her children and for her children to "participate in age interest activities like sports, art or music."[14] Ms. Smith additionally asks for reimbursement of court costs and legal fees.[15] She also requests we compel the Philadelphia Department of Human Services and the Community Umbrella Agency to begin to conduct her reunification hearing and a permanency review.[16] Ms. Smith asks us to order the state court to appoint a new child advocate.[17] Ms. Smith asks us to order Analyst Everett ensure the Community Umbrella Agency team "carries out all legal and mandated duties per [her] case."[18] She also requests we reprimand Analyst Everett.[19]

Having previously granted Ms. Smith leave to proceed *in forma pauperis*, Congress directs us to study the sufficiency of her complaint under 28 U.S.C. § 1915(e)(2)(B). We must dismiss an action we determine is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief.[20] When considering whether to dismiss a complaint for failure to state a claim under section 1915(e)(2)(B)(ii), we apply the same standard used under Federal Rule of Civil Procedure 12(b)(6).[21] We accept all factual

4

allegations in the complaint as true and construe those facts in the light most favorable to Ms. Smith to determine whether she states a claim for relief plausible on its face.[22] We must be "mindful of our 'obligation to liberally construe a pro se litigant's pleadings …'"[23] We "remain flexible" and "apply the relevant legal principle even when the complaint has failed to name it."[24] But "pro se litigants still must allege sufficient facts in their complaints to support a claim" and "cannot flout procedural rules – they must abide by the same rules that apply to all other litigants."[25]

A.   **Ms. Smith does not plead a basis to overcome *Younger* abstention .**

We begin our analysis by examining whether we are permitted to intervene in Ms. Smith's ongoing custody proceeding. Ms. Smith  asks us to "issue a motion to compel the Department of Human Services in Philadelphia" and the "CUA organization to begin to conduct [her] reunification hearings" and  a new child advocate in an ongoing child reunification proceeding in the Philadelphia County Court of Common Pleas, Family Division. [26]

We are first mindful of our "virtually unflagging obligation" to hear and decide cases within the scope of our jurisdiction.[27] Ms. Smith claims certain persons violated her Fourteenth Amendment due process rights invoking our federal question jurisdiction. There are, however, certain cases requiring we abstain from jurisdiction. One abstention doctrine, known as *Younger* abstention, prevents us from hearing cases relating to certain ongoing state court proceedings.[28]

We apply a two-stage analysis to determine whether *Younger* abstention applies.  First, we examine whether the underlying state court litigation falls within one of three specific categories of cases: (1) ongoing state criminal prosecutions; (2) certain "civil enforcement proceedings"; and (3) pending "civil proceedings involving certain orders … uniquely in furtherance of the state courts' ability to perform their judicial functions" (the "*Sprint* categories").[29] Child custody

proceedings are civil proceedings falling into the third category.[30] Ms. Smith asks us to intervene in a state court child custody proceeding. "[C]hild custody proceedings are a strong candidate for *Younger* abstention."[31]

At the second stage, we consider three factors articulated by the Supreme Court in *Middlesex County Ethics Committee v. Garden State Bar Association*: whether (1) there is an ongoing state judicial proceeding; (2) the proceeding implicates important state interests; and (3) there is an adequate opportunity to raise constitutional challenges in the state proceeding.[32] We must abstain under *Younger* if these factors apply.

Ms. Smith pleads the custody proceeding involving her children is ongoing in the Philadelphia County Court of Common Pleas, Family Division. The first prong is satisfied. Child custody proceedings implicate important state interests, satisfying the second prong.[33] The third prong requires the child custody proceedings to afford Ms. Smith an adequate opportunity to raise federal claims. Ms. Smith must plead "the state procedural law barred presentation of [her] claims."[34] As currently pleaded, we cannot say the Philadelphia County Court of Common Pleas, Family Division barred Ms. Smith from presenting her claims. Her hearing may have been delayed by Advocate Martino's absence, but there are no facts to suggest the court cancelled her hearing. A delayed hearing does not warrant equitable relief.[35] This is true even where a plaintiff's custody case has been delayed for years.[36]

Ms. Smith's alleged delay in a hearing does not establish a state procedural bar. As all three factors of the second step of *Younger* are satisfied, we must abstain from considering equitable relief which would compel the state court to schedule hearings or appoint a new child advocate under *Younger*.

**B.      We dismiss Ms. Smith's civil rights claims for damages without prejudice.**

Ms. Smith is left with a potential civil rights claims for damages. Ms. Smith asserts her right to the custody, care, and management of her children.[37] We liberally construe her pro se claim as certain persons deprived her of a Fourteenth Amendment right to substantive and procedural due process. We also liberally construe her as pleading Analyst Everett's threat to block Ms. Smith's email communications to the Philadelphia Department of Human Services curtailed her access to the Philadelphia County Court of Common Pleas, Family Division under the First Amendment.

Congress provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State …, subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted …."[38]

Congress does not confer rights upon Ms. Smith through section 1983. The civil rights law is the vehicle used to bring federal constitutional claims in federal court. To proceed, Ms. Smith must plead two elements: (1) a person acting under color of state law committed the complained-of conduct; and (2) the conduct deprived each of rights, privileges, or immunities secured by the Constitution or laws of the United States.[39]

Ms. Smith sues (1) the Asociación and its employees; (2) Child Advocate Martino; and (3) Analyst Everett. We must separately evaluate whether they constitute state actors under section 1983.

**1.  Ms. Smith fails to plead Asociación, its employees, and Advocate Martino are state actors.**

Congress allows suits against private parties acting under color of state law where (1) the private party deprived the plaintiff of a constitutional right by exercising "a right or privilege having its source in state authority" and (2) where the private party may be "appropriately characterized as [a] 'state actor'" where the private party "is a state official, … has acted together with or has obtained significant aid from state officials, or [where his] conduct is otherwise chargeable to the State."[40] To assist in this inquiry, the Supreme Court  articulated the "'public function' test, the 'close nexus' test[,] and the 'symbiotic relationship' test."[41]

The "public-function" test considers whether the defendant actor performed a function traditionally and exclusively in the province of the state.[42] The "close nexus" test, in contrast, examines whether there exists such a close relationship "between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself."[43] Such a relationship may be established by showing the state either significantly encouraged the activity or participated in the activity, or by showing an actor, controlled by the state, performed a function intertwined with government policies or management.[44] Funding by the state does not, alone, demonstrate a sufficiently "close nexus."[45] Our Court of Appeals limited application of the "symbiotic relationship" test to cases where the state and a private business received some mutual benefit.[46] Unless the plaintiff alleges a tangible benefit flowing from the private agency to the state, we need not conduct the "symbiotic relationship" test.[47] We will not engage in a "symbiotic-relationship" analysis because Ms. Smith does not allege a fact showing the State derives any benefit from its relationships with the persons she is suing.

### a.    Ms. Smith does not plead Asociación and its employees are state actors.

Ms. Smith does not plead facts to support a finding Asociación or its identified employees are state actors. Ms. Smith does not explain a connection between the Asociación and the City beyond identifying it as a Community Umbrella Agency.[48] We accept the City partners with community-based agencies, including Asociación.[49] The mere existence of this relationship, however, does not automatically transform Asociación or its employees into state actors.[50] Ms. Smith must still satisfy one of the three tests.  She satisfies none.

Because Ms. Smith does not allege any substantial connection between Asociación and the City, or any conduct fairly attributable to the City, we cannot find they had a "close nexus."[51] And because Ms. Smith did not reference which specific employees engaged in what conduct, we cannot find the Asociación employees participated in conduct which could be fairly attributed to the City.[52]

Ms. Smith  does not allege how Asociación engaged in a public function. "No aspect of providing care to foster children in Pennsylvania has ever been the exclusive province of the government."[53] Our Court of Appeals described the history of foster care in *Leshko v. Servis*,[54] explaining although Pennsylvania administers aspects of the foster care system which were previously performed privately, "providing hands-on care has never been, and is not now, an exclusively government function."[55] Although Pennsylvania has a broad *duty* to care for needy children, this duty did not become a public *function* until the Juvenile Act passed in 1901.[56] Liability only attaches to private actors "exercising traditional public *functions*, not traditionally public *duties.*[57] "Even today, while removing children from their homes and placing them with other caregivers arguably are exclusively governmental functions in Pennsylvania, the hands-on care may be tendered by families, private organizations, or public agencies . . . and thus is not

exclusively governmental."[58] Placing a child in foster care may constitute a state action.[59] But providing hands-on care does not.

Ms. Smith does not allege Asociación or its employees' personal involvement in placing her children in foster care.[60] She instead complains of Asociación's handling of her children's medical care, visitations, and personal effects.[61] As the act of providing care to foster children is not an exclusive government function, Asociación and its employees cannot be said to be serving a public function as a matter of law absent allegations regarding conduct showing they act under color of state law.

Ms. Smith fails to plead Asociación and its named employees are state actors necessary to proceed on a civil rights claim.

### b.   Ms. Smith does not plead Child Advocate Martino is a state actor.

Ms. Smith's sole allegation against Child Advocate Martino is his failure to appear for the scheduled permanency hearing caused an unreasonable delay and extension of her family separation.[62] Ms. Smith identifies Advocate Martino as simply "the Child Advocate."[63] "Unlike the roles of guardian *ad litem* and counsel for child, which are clearly delineated in the child custody law, the statute does not recognize the role of 'child advocate' or define the scope of a child advocate's authority in custody cases."[64] In Pennsylvania, child advocates may be counsel appointed by the court.[65] They may also be social workers.[66] They may even be volunteers.[67] We cannot determine whether a child advocate acted within statutory authority when their role is "ambiguous at the outset."[68] Without more facts about Advocate Martino's status, relation to the court, and responsibilities, we cannot find his position makes him a state actor.[69]

Ms. Smith does not allege facts allowing us to plausibly infer Advocate Martino is a state actor under the "close nexus" or "public function" tests. The purpose of the "close nexus"

10

requirement is to assure constitutional standards are invoked "only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains."[70] Because Ms. Smith does not allege Advocate Martino's specific involvement in her case, particularly whether the court appointed him and the duties of his role, we cannot find the state is responsible for his conduct.

We also lack facts allowing us to plausibly infer Advocate Martino took actions which are "fairly attributable" to the City without knowing what actions he took.[71] Ms. Smith does not plead facts from which we could find a close nexus between the City and the challenged action such "that [his] seemingly private behavior may be fairly treated as that of the [City] itself."[72]

Advocate Martino's ambiguous role also fails the "public function" test.  The "traditionally exclusive public function requirement is a 'rigorous standard' that is 'rarely … satisfied.'"[73] To find Advocate Martino is a state actor, Ms. Smith must allege he engaged in conduct which lies in the exclusive province of the State.[74] Although Ms. Smith alleges Advocate Martino should have attended her permanency review hearings, she does not state in what capacity he would have acted. The Pennsylvania General Assembly does not define the scope and responsibilities of "child advocates."[75] Child advocates may serve as guardian ad litem, legal counsel, or a combination of the two.[76] Without pleading facts describing Advocate Martino's conduct at issue, we cannot consider whether such conduct is an exclusive state function.

We cannot find Ms. Smith plausibly alleges Advocate Martino is a state actor. We must dismiss Ms. Smith's civil rights claims against him.

### 2.  Ms. Smith pleads Analyst Everett is a state actor in her individual capacity.

To plausibly state a claim against Analyst Everett under section 1983, Ms. Smith must show Analyst Everett, acting under color of law deprived her of a constitutional right. Ms. Smith

does not allege Analyst Everett acted under color of state law but we liberally construe her latest amended Complaint to find it is at least plausible Analyst Everett is a state actor. If we determine Analyst Everett is a state actor, we must determine if Ms. Smith plausibly alleges a deprivation of a constitutional right.

Ms. Smith alleges Analyst Everett violated her constitutional rights in two ways. First, she alleges Analyst Everett failed to act to ensure Asociación carried out its duties.[77] Second, she claims Analyst Everett threatened retaliation if Ms. Smith continued her daily communications with the City seeking to pursue her remedies.[78]

Ms. Smith does not allege the responsibilities of Analyst Everett's position. We know from the complained-of emails attached to Ms. Smith's complaint, Analyst Everett is a Social Services Program Analyst for the Department of Human Services, Commissioner's Action Response Office and sent emails from a "phila.gov" email address. This suggests it is at least plausible Analyst Everett is a state actor.

Ms. Smith alleges Analyst Everett had, at a minimum, some supervisory authority over the Community Umbrella Agencies. "In Pennsylvania, '[a]ny person who is acting or who has acted on behalf of a governmental unit, whether on a permanent or temporary basis, whether compensated or not,' is an employee of that governmental unit."[79] The Philadelphia Department of Human Services is a municipal agency.[80] "[S]tate employment is generally sufficient to render the defendant a state actor."[81] Analyst Everett's position at the Philadelphia Department of Human Services, then, is sufficient to establish she acted under the color of state law for purpose of Ms. Smith's section 1983 claim.

Finding Ms. Smith plausibly alleges Analyst Everett is a state actor, we turn to whether Ms. Smith brings claims against Analyst Everett in her individual or official capacity. It is unclear

12

whether Ms. Smith sues Analyst Everett in her individual or official capacity. If Ms. Smith intended to sue Analyst Everett in her official capacity, the claim fails. State actors sued in their official capacities for money damages are not "persons" who can be sued under § 1983.[82] Any claim against Analyst Everett in her official capacity are dismissed.

Any claim against Analyst Everett must be brought in her individual capacity. Individual liability can be imposed under section 1983 only if a state actor has personal involvement in the alleged constitutional violation.[83] Section 1983 liability cannot be based "solely on the operation of respondeat superior."[84] A plaintiff can demonstrate personal involvement "through allegations of personal direction or of actual knowledge and acquiescence," so long as these allegations are made with "appropriate particularity."[85]

### 3. Ms. Smith does not plausibly plead Analyst Everett deprived her of a constitutional right.

Congress allows three kinds of section 1983 claims under the claims at issue today: (1) a violation of "substantive due process" protecting a claimant from "certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them'";  (2) a violation of "procedural due process" protecting a claimant from the "deprivation of a state action of a constitutionally protected interest in 'life, liberty, or property'" without due process of law; and (3) a violation of a specific right guaranteed by the First Amendment.[86]

#### a. Ms. Smith does not plead a Fourteenth Amendment substantive due process claim.

To bring a substantive due process claim under the Fourteenth Amendment, Ms. Smith must allege Analyst Everett deprived her of a protected constitutional interest by engaging in conduct which "shocks the conscience."[87] A parent has a constitutionally protected liberty interest in the custody, care, and management of her children.[88] This interest is "not absolute … as the

'liberty interest in familial integrity is limited by the compelling governmental interest in the protection of children.'"[89]

"[O]nly the most egregious official conduct" can "shock the conscience."[90] This standard is an "extremely difficult [one] to meet."[91] "The exact degree of wrongfulness necessary to reach the 'conscience-shocking' level depends upon the circumstances of a particular case."[92]

"It is well established that 'the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property."[93]

Ms. Smith alleges Analyst Everett did not properly ensure Asociación carried out its duties.[94] The duties Asociación allegedly failed to carry out include providing adequate medical and dental care, coordinating visitation between the siblings with Ms. Smith, and transferring the children's personal effects to each foster home.[95] To the extent Ms. Smith's claim against Analyst Everett is based on responsibility for the Asociación and its employees, the claim is dismissed. Analyst Everett cannot be liable under section 1983 based on a respondeat superior theory; that is, she cannot be held liable for conduct by the Asociación and its employees. To the extent the claim is based on Analyst Everett's own negligence for failing to ensure the Asociación and its employees "carried out the appropriate duties and tasks of Ms. Smith's case," we find it does not rise to the level of "shocking the conscience" necessary to show a deprivation of her constitutional right. Analyst Everett's alleged failure to supervise amounts to negligence.[96]

Ms. Smith also alleges Analyst Everett violated her substantive due process right to the care, custody, and control of her children by threatening to block her emails to the Philadelphia Department of Human Services. We find this conduct is not sufficiently egregious to rise to the level of "shocking the conscience."[97] Threats alone which cannot be traced to actual injury do not rise to this high standard.[98] In *DB Enterprise Developers & Builders, Inc. v. Micozzie*,[99] for

example, our Court of Appeals found defendant's threats to derail plaintiff's construction project did not "shock the conscience," in part, because they at no point interrupted or stopped the plaintiff from continuing to build.[100] Because Ms. Smith does not allege actual harm resulting from Analyst Everett's threats, she does not plead facts from which we may infer Analyst Everett's conduct "shocked the conscience."

We dismiss Ms. Smith's substantive due process claims against Analyst Everett.

### b. Ms. Smith does not plead a procedural due process claim.

To bring a procedural due process claim, Ms. Smith must allege (1) a deprivation of an individual interest encompassed within the Fourteenth Amendment's protection of "life, liberty, or property;" and (2) the procedures available to her did not provide "due process of law."[101]

To the extent we liberally construe Ms. Smith's latest amended Complaint as asserting a procedural due process claim, she fails to allege facts plausibly suggesting a deficiency in the procedures available to her. Ms. Smith does not plead facts addressing whether Analyst Everett's threat to block her email communications resulted in a denial of the procedures available to her, and does not allege more procedures are warranted. Ms. Smith does not allege Analyst Everett's threats caused her to be denied notice of, or access to, her hearings. She does not allege whether Analyst Everett did in fact block communications, and consequently, whether she could not contact City officials about her case and claims. Ms. Smith also does not allege Asociación and its employees are responsible for scheduling her hearings or providing notice. Analyst Everett's alleged failure to supervise Asociación does not implicate a deprivation of Ms. Smith's due process rights.

We dismiss Ms. Smith's procedural due process claim against Analyst Everett without prejudice.

       c.  **Ms. Smith does not plead a First Amendment right of access to court claim.**

We liberally construe Ms. Smith's latest amended Complaint to also allege Analyst Everett's threatening emails violated Ms. Smith's First Amendment right of access to the court. "[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances."[102] "At its core, the right of petition protects a personal right to bring complaints about public policy directly to officers of the government."[103]

Ms. Smith alleges she personally communicated with Analyst Everett about her concerns over Asociación's management of her children and provides emails demonstrating such communication. The emails show Analyst Everett's responses, including "stop the daily emails/calls"; "please stop adding the DHS Commissioner and Deputy Commissioners, to [her] ongoing email communications to the CUA Agency"; and Ms. Smith's continued emailing "could have a negative outcome on [Ms. Smith's] services/service delivery and how decisions are made about [her]/[her] family, in and/or outside of the Court room." The attached emails are sufficient to allow us to plausibly infer Analyst Everett's personal involvement.

Ms. Smith alleges Analyst Everett expressed "prejudice towards [her]" and threatened retaliation should she continue to contact the Philadelphia Department of Human Services.[104] Analyst Everett's July 21, 2021 and October 22, 2021 emails warned Ms. Smith's continued disregard for protocol "could have a negative outcome" on her case and could force the Philadelphia Department of Human Services "to explore [their] options around blocking email correspondence."[105] Ms. Smith does not allege she stopped contacting the Philadelphia Department of Human Services or the Asociación. The attached documents show she responded to Analyst Everett's October 22, 2021 email three times.[106] Ms. Smith also does not allege the Philadelphia Court of Common Pleas delayed or cancelled her permanency and/or reunification hearings as a

result of Analyst Everett's alleged threats. Ms. Smith does not claim she took a step, or refrained from taking a step, because of Analyst Everett's emails.

Ms. Smith alleges Analyst Everett threatened to block her emails to the Philadelphia Department of Human Services—the agency responsible for supervising the Community Umbrella Agency's care of her minor children. Ms. Smith's persistent email communications are proof of her attentiveness to and concern for her children's care. If the City blocked her communications, Ms. Smith may have been prevented from exercising her parental rights to express concerns and grievances to the agencies charged with ensuring the care and well-being of her children. But the "mere fact of blocking alone, regardless of intent," does not rise to a constitutional violation.[107] The right to petition is "cut from the same cloth as the other [First Amendment] guarantees."[108] As a result, the "deprivation of the right to petition mirrors the intent requirements of due process analysis."[109]

To establish an access to court claim then, Ms. Smith must plead Analyst Everett acted "with reckless or intentional indifference to [her] constitutional rights."[110] Ms. Smith alleges Analyst Everett intentionally threatened to block her emails to the Philadelphia Department of Human Services. Analyst Everett's October 22, 2021 email allows us to plausibly infer the deliberate nature of her threat and intentional disregard of Ms. Smith's right to speak with officials about concerns with her custody case. Ms. Smith satisfies this requirement at this early stage.

But this access claim must presently fail for lack of actual harm or prejudice. Ms. Smith must also plead "actual harm or prejudice resulting from the alleged deprivation of rights."[111] She may allege this injury by describing how Analyst Everett "took or was responsible for actions that hindered [her] efforts to pursue a legal claim."[112] Ms. Smith does not plead Analyst Everett hindered or otherwise deterred her efforts to pursue a legal claim. She does not claim Analyst

Everett blocked her access to family court proceedings or her communications with the Department of Human Services. The emails Ms. Smith attached to her complaint only allow us to infer Ms. Smith, rather than being deterred by Analyst Everett's threats, responded to the email three times. Ms. Smith alleges the injuries she sustained from Analyst Everett's threats include "psychological trauma, stress, anxiety, and fear."[113] But Ms. Smith does not allege an actual injury to her *case or claims*.

We cannot find Ms. Smith sufficiently pleads facts to show Analyst Everett's threats hindered her pursuit of her claim or her access to the court. We dismiss this claim without prejudice.

### III.    Conclusion

Nashae Naeisha Smith sues Asociación and its employees, Advocate Martino, and Analyst Everett alleging they violated her right to due process by depriving her of a liberty interest in the care, custody, and management of her children. She also alleges Analyst Everett violated her First Amendment right of access to the courts by threatening to block her emails to the Philadelphia Department of Human Services. We granted Ms. Smith leave to proceed *in forma pauperis* as she demonstrated an inability to pay the fees to commence this action. Congress requires we screen the sufficiency of her complaint under 28 U.S.C. § 1915(e)(2)(B) before issuing summons.

Ms. Smith fails to plead a procedural law which barred presentation of her claims. We are required to abstain from interfering with civil custody proceedings under *Younger* and cannot compel the Philadelphia Department of Human Services to conduct her permanency and reunification hearings or appoint a new child advocate.

Ms. Smith also fails to plead civil rights claims for damages. She has twice pleaded facts allowing us to plausibly infer  Analyst Everett may be considered a state actor. But there are no

pleaded facts allowing us to infer Analyst Everett's alleged conduct is so egregious as to "shock the conscience" and constitute a substantive due process violation. Nor does Analyst Everett's alleged threat to block Ms. Smith's email communications constitute a denial of her procedural due process or a denial of her First Amendment right to access the court without pleading an actual injury. Ms. Smith fails to state a claim entitling her to monetary damages for the alleged violations.

We dismiss Ms. Smith's amended Complaint but grant her leave to timely amend one last time on these civil rights theories for damages if she can plausibly plead state actors deprived her of a constitutional right.

---

[1] ECF Doc. No. 24 at 3, §III.C.

[2] *See* Key Partnerships, City of Philadelphia Department of Human Services, https://www.phila.gov/departments/department-of-human-services/about-us/key-partnerships/.

[3] ECF Doc. No. 27.

[4] *Id.* at 3, § III.C.

[5] ECF Doc. No. 23 at 3, § III.C.

[6] *Id.* at 3, § III.C. – 4, § IV.

[7] ECF Doc. No. 23 at 3, § III.B, ECF Doc. No. 24 at 3, §III.B.

[8] ECF Doc. No. 23 at 3, § III.B, ECF Doc. No. 24 at 3, § III.B. ECF Doc. No. 27 at 3, § III.

[9] ECF Doc. No. 23 at 15 (using the pagination assigned by the CM/ECF docketing system).

[10] *Id.*

[11] *Id.* at 25 (using the pagination assigned by the CM/ECF docketing system).

[12] *Id.* at 25–26.

[13] ECF Doc. No. 24 at 4, § V.

[14] *Id.*

[15] *Id.*

[16] *Id.*, ECF Doc. No. 27 at 4, § V.

[17] ECF Doc. No. 27 at 4, § V.

[18] ECF Doc. No. 23 at 4.

[19] *Id.*

[20] 28 U.S.C. § 1915(e)(2)(B).

[21] *Elansari v. Univ. of Pa.*, 779 F. App'x 1006, 1008 (3d Cir. 2019) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).

[22] *Id.* (quoting *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012)).

[23] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011)).

[24] *Yogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013)).

[25] *Id.* (quoting *Mala*, 704 F.3d at 245).

[26] ECF Doc. No. 27 at 4, § V.

[27] *Greco v. Bruck*, No. 21-1035, 2021 WL 5276674, at *2 (3d Cir. Nov. 12, 2021) (*quoting Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).

[28] *Younger v. Harris*, 401 U.S. 37 (1971).

[29] *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013).

[30] *Mikhail v. Kahn*, 991 F. Supp. 2d 596, 627–28 (E.D. Pa. 2014); *Shallenberger v. Allegheny Cnty.*, No. 20-73, 2020 WL 1465853, at *7 (W.D. Pa. Mar. 26, 2020) ("[c]ourts within this Circuit have repeatedly held that child-custody cases fit 'squarely into the third category of exceptional cases[ ]' and that '[c]ustody cases are particularly appropriate for *Younger* abstention'") (quoting *Karl v. Cifuentes*, No. 15- 2542, 2015 WL 4940613, at *4 (E.D. Pa. Aug. 13, 2015)).

[31] *Mikhail*, 991 F. Supp. 2d at 626.

[32] 457 U.S. 423, 432 (1982); *Abbott v. Mette*, No. 21-1804, 2021 WL 5906146, at *1–*2 (3d Cir. Dec. 14, 2021).

[33] *Mikhail*, 991 F. Supp. 2d at 628.

---

³⁴ *Id*. at 629 (quoting *Penzoil Co. v. Texaco, Inc*., 481 U.S. 1, 14 (1987)).

³⁵ *See Dunyan v. Att'y Gen.'s Off.*, No. 90-6395, 1990 WL 156636, at *1 (E.D. Pa. Oct. 11, 1990) (finding *Younger* prevented interfering in a pending state criminal proceeding despite plaintiff's allegations of delayed hearings).

³⁶ For example, in thoughtful analysis pre-dating the *Sprint* holding, a father challenged the Philadelphia Court Family Division's six-year delay in obtaining a custody hearing. *Watkins v. Blocker*, No. 06-3775, 2007 WL 789425, at *2, *6 (E.D. Pa. Mar. 14, 2007). The father claimed the Philadelphia Family Court, supervising judge, and court employee violated his First and Fourteenth Amendment rights by preventing him from having a custody hearing and sought an order from Judge McLaughlin in our District requiring the Family Court to hold a hearing. Judge McLaughlin abstained under *Younger* on father's claims against a court employee, finding on ongoing state custody proceeding with which the federal court would interfere, the state proceeding implicated important state interests, and the state proceeding provided an opportunity to raise federal claims. *Id.* at *6. Judge McLaughlin did not abstain from the father's claim for monetary damages for the alleged deprivation of his federal constitutional rights. *Id.* Neither do we.

³⁷ ECF Doc. No. 23 at 2, ECF Doc. No. 24 at 2,  ECF Doc. No. 27 at 2.

³⁸ 42 U.S.C. § 1983.

³⁹ *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011).

⁴⁰ *Diamond v. Pa. State Educ. Assoc.*, 972 F.3d 262, 270–71 n.2 (3d Cir. 2020) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982)).

⁴¹ *America Bd. of Internal Med. v. Von Muller*, No. 10-2680, 2011 WL 857337, at *3 (E.D. Pa. Mar. 10, 2011) (citing *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 801 (3d Cir. 2001)); *see also Jenkins v. Northeast Treatment Ctrs., Inc.,* No. 21-1421, 2021 WL 5227186, at *5 (E.D. Pa. Nov. 10, 2021) (citing *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009)) ("To further clarify the line between state and private actors, the Court of Appeals recognizes three broad tests to determine when state action exists: (1) whether the private actor has exercised 'powers that are traditionally the exclusive prerogative of the state' (the 'public function test'); (2) whether the private actor has acted 'in concert with state officials' (the 'close nexus test'); and (3) whether the State has 'so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity' (the 'symbiotic relationship test').").

⁴² *Leshko v. Servis*423 F.3d 337, 343 (3d Cir. 2005).

⁴³ *Id.* at 339 (quoting *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)) (internal quotation marks omitted).

⁴⁴ *Id.* at 340.

[45] *Id.*; *American Mfrs. Mutual Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999) (holding "[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action"); *Crissman v. Dover Downs Ent. Inc.*, 289 F.3d 231, 244 (3d Cir. 2002) (holding detailed regulation and receipt of state funds, without more, does not create state action).

[46] *Leshko*, 423 F.3d at 341; *Crissman*, 289 F.3d at 242 ("Because the full range of Supreme Court precedent that now guides our analysis appears to narrow, but not to overrule, *Burton,* we must conclude that, while *Burton* remains good law, it was crafted for the unique set of facts presented, and we will not expand its reach beyond facts that replicate what was before the Court in *Burton.*").

[47] *See Leshko*, 423 F.3d at 341 ("Given that no tangible benefit flowed to Pennsylvania through the Servises . . . we have no occasion to revive *Burton['s]* . . . so-called symbiotic relationship test.") (internal citation omitted).

[48] *Id.* at 3.

[49] *See* Key Partnerships, City of Philadelphia Department of Human Services, https://www.phila.gov/departments/department-of-human-services/about-us/key-partnerships/ listing Asociación as the "Region 2" Community Umbrella Agency for Philadelphia.

[50] *See e.g., Jenkins v. Northeast Treatment Ctrs., Inc.*, No, 21-1421, 2021 WL 5227186, at *5–6 (E.D. Pa. Nov. 10, 2021) (finding a Community Umbrella Agency which provided a number of social services within the city of Philadelphia is not a state actor), *and Summers v. Pa. Dep't of Human Servs.*, No. 18-3642, 2018 WL 4169046, at *2 (E.D. Pa. Aug. 29, 2018) (finding plaintiff could not establish Community Umbrella Agency employees  acted under color of law without identifying the specific conduct in which specific employees engaged).

[51] *Mikhail v. Kahn*, 991 F. Supp. 2d 596, 642 (E.D. Pa. 2014) (stating a "violation of the Constitution . . . can only occur by action 'fairly attributable to the State.'").

[52] *Summers*, 2018 WL 4169046 at *2 (explaining plaintiff "[was] still obligated to explain how each individual she seeks to proceed against was personally involved in the violation of her constitutional rights, whether due to the official's own misconduct or the official's deliberate indifference to known deficiencies in a policy or procedure that violated her rights") (citing *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 320 (3d Cir. 2014), *reversed on other grounds, Taylor v. Barkes*, 135 S. Ct. 2042 (2015)).

[53] *Leshko*, 423 F.3d at 343.

[54] 423 F.3d 337 (3d Cir. 2005).

[55] *Id.* at 344.

[56] *Id.* at 345.

[57] *Id.* (emphasis in original).

[58] *Id.* (citing 42 Pa.C.S. § 6351).

[59] *See Barron v. Washington Cnty. Children and Youth Social Serv. Agency*, No. 05-1517, 2006 WL 931678, at *4 (W.D. Pa. Apr. 11, 2006) (citing *Harris v. Litz*, 418 F. Supp. 3d 643, 647–48 (E.D. Pa. 2005) (stating private agency was potentially liable under § 1983 because it performed a function traditionally the prerogative of the state, i.e., placement of a child in foster home)).

[60] *See* ECF Doc. No. 24 at 3–4.

[61] *Id.* at 3.

[62] ECF Doc. No. 27 at 3, § III.C.

[63] *Id.*, at 2, § I.B.

[64] *M.G. v. L.D.*, 155 A.3d 1083, 1097 (Pa. Super. Ct. 2017) (citing 23 Pa.C.S. §§ 5334–5335).

[65] *See e.g., Weller v. Ransom-Garner*, 338 F. App'x 249, (3d Cir. 2009) (identifying a child advocate assigned from the Defender Association).

[66] *See e.g., Miller v. City of Phila.*, 174 F.3d 368 (3d Cir. 1999) (identifying a "Child Advocate Social Worker").

[67] *See e.g., In re Adoption of B.Y.A.*, 262 A.3d 474 (Pa. Super. Ct. 2021) (identifying a "volunteer child advocate").

[68] *See M.G.*, 155 A.3d at 1098.

[69] *See e.g., id.* (emphasis in original). *See also Blum v. Yartesky*, 457 U.S. 991, 1004 (1982) ("[T]here is a sufficiently close nexus between the State and the challenged action of [defendant] so that the action of the latter may be fairly treated as that of the State itself.").

[70] *Blum*, 457 U.S. at 1004 (emphasis in original).

[71] *Mikhail*, 991 F. Supp. 2d at 642.

[72] *Leshko*, 423 F.3d at 347 (quoting *Brentwood Acad. v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 295 (2001)).

[73] *Id.*

[74] *Id.* at 343.

[75] *M.G.*, 155 A.3d at 1097.

[91] *DB Enter. Dev. & Builders, Inc. v. Micozzie*, 394 F. App'x 916, 919 (3d Cir. 2010)

[92] *Miller v. City of Phila.*, 174 F.3d 368, 375 (3d Cir. 1999).

[93] *Odi v. Alexander*, 378 F. Supp. 3d 365, 386 (E.D. Pa. 2019) (quoting *Daniels v. Williams*, 474 U.S. 327, 328 (1986)) (emphasis in original).

[94] ECF Doc. No. 23 at 3.

[95] ECF Doc. No. 24 at 3.

[96] *See e.g., Forrest v. Parry*, 930 F.3d 93, 112 (3d Cir. 2019) (considering plaintiff's failure to supervise claim to be a state law negligent supervision claim).

[97] *Kane v. Barger*, 902 F.3d 185, 192 (3d Cir. 2018) (citing *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008)).

[98] *See e.g., DB Enter. Dev. & Builders, Inc. v. Micozzie*, 394 F. App'x 916, 919–20 (3d Cir. 2010).

[99] 394 F. App'x 916 (3d Cir. 2010).

[100] *Id.* at 919–920.

[101] *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006) (citing *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).

[102] *Woodford v. Ngo*, 548 U.S. 81, 122 (2006) (Stevens, J., dissenting). *See also Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997) ("an individual's constitutional right of access to court is protect by the First Amendment's clause granting the right to petition the government for grievances").

[103] *Ferrone v. Onorato*, 298 F. App'x 190, 193 (3d Cir. 2008) (quoting Ronald J. Krotoszynski & Clint A. Carpenter, *The Return of Seditious Libel*, 55 UCLA L. Rev. 1239, 1246 (2008)).

[104] ECF Doc. No. 23 at 3–4.

[105] *Id.* at 25–26.

[106] *Id.* at 26–27.

[107] *Id.*

[108] *McDonald v. Smith*, 472 U.S. 479, 482 (1985).

[109] *Ferrone*, 298 F. App'x at 193 (citing *Pink v. Lester*, 52 F.3d 73, 76–77 (4th Cir. 1995)).

---

[110] *Id.* (quoting *Woods v. Lemonds*, 804 F. Supp. 1106, 1109 (E.D. Mo. 1992), *aff'd,* 991 F.2d 802 (8th Cir. 1993)).

[111] *Id.*; *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006) (stating claim for denial of court access requires plaintiff "show . . . her exercise of the right at issue, the right of accessing the courts to secure judicial relief, has been infringed in some consequential way"), *cert. denied*, 549 U.S. 1286 (2007)); *Adegbuji v. Middlesex Cnty.*, 169 F. App'x 677 (3d Cir. 2006) (affirming dismissal of access to courts claims for failing to allege actual injury); *Lewis v. Casey*, 517 U.S. 343, 351 (1996) (holding claimant seeking damages for denial of access to the courts must "demonstrate that the alleged" deprivation "hindered his efforts to pursue a legal claim").

[112] *Beckerman v. Susquehanna Twp. Police and Admin.*, 254 F. App'x 149, 153 (3d Cir. 2007) (internal quotation marks omitted) (quoting *Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997)).

[113] ECF Doc. No. 23 at 4.